UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X   Docket#
UNITED STATES OF AMERICA,      : 22-cr-00164(RJD)
                               :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
THOMAS WELNICKI,               :
                               : October 28, 2022
              Defendant        : 1:06 p.m.
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**

**For the Government:**        **Breon S. Peace, Esq.**
                               United States Attorney


                        BY:    **Nina Gupta, Esq.**
                               **Andres Palacio, Esq.**
                               **Douglas Pravda, Esq.**
                               Assistant U.S. Attorneys
                               271 Cadman Plaza East
                               Brooklyn, New York 11201




**For the Defendant:**         **Deirdre Von Dornum, Esq.**
                               Federal Defenders of New York
                               One Pierrepont Plaza, 16th Fl.
                               Brooklyn, NY 11201




**Transcription Service:**     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  All rise.

2          THE COURT:  Please be seated.

3          THE CLERK:  We're here in a pretrial conference

4   in case number 22-cr-164, *United States v. Welnicki*.

5          Counsel, please state your appearances starting

6   with the government.

7          MS. GUPTA:  Good afternoon, your Honor.  Nina

8   Gupta, Andres Palacio, and Doug Pravda for the United

9   States.

10         THE COURT:  Good afternoon.

11         MS. VON DORNUM:  Good afternoon, your Honor.

12   Deirdre Von Dornum, Federal Defenders of New York, for

13   Thomas Welnicki.  Mr. Welnicki is present next to me.

14         THE COURT:  Okay.  Good afternoon and good

15   afternoon, Mr. Welnicki.

16         So I understand from Judge Dearie that the case

17   will proceed to trial solely on Count 2 in the

18   superseding indictment.  Is that correct?

19         MS. GUPTA:  That's correct.

20         THE COURT:  So Ms. Von Dornum, in your proposed

21   voir dire you indicated that depending on the rulings you

22   would be submitting additional potential voir dire which

23   I took to mean that if both counts in the superseding

24   indictment were to go to trial and there was no

25   severance, you would be submitting additional proposed

3

Proceedings

1   questions.  But obviously, I'm happy to let you propose
2   additional questions if that's what you wanted to do.
3   What's your view at this point?
4          MS. VON DORNUM:  No, you read my intentions
5   correctly, your Honor, I think.  If anything, we can
6   reduce.
7          THE COURT:  Okay.  There are a few things I
8   wanted to just go over logistically before we talk about
9   particular questions.  One is there is a list of names
10  and places that was provided and I think that that
11  includes names and places that were perhaps relevant only
12  as to both counts of the superseding indictment.  And so
13  I'd like to have a revised list of names and places and
14  if one of you can prepare them.  And my general view on
15  this thing is if one side wants a name or place mention,
16  we should include it on the list.  I'm not going to need
17  to make a ruling about it.  So out of an abundance of
18  caution, you know, I'll include a name or place if either
19  side wants to do it.  So please submit a revised list on
20  the docket by end of day Tuesday.  So that's one thing.
21         The second thing is I understand that there was
22  an original estimate for this length of trial as between
23  three and four days.  Is that still accurate?
24         MS. GUPTA:  No, your Honor.  I think it would
25  be shorter at this point.  I think the government would

4

Proceedings

1  be done in one day, so perhaps two days for both cases.

2          MS. VON DORNUM:  That makes sense.

3          THE COURT:  Okay.  What I'll tell the jury then

4  is that the trial is anticipated to last two days,

5  approximately two days to begin after jury selection is

6  completed.  And there is a possibility that the trial

7  will not commence until Monday because I don't know how

8  long jury selection is going to take.  And so I want to

9  leave that out there so that the, for instance, jurors I

10  speak to on Wednesday morning, if we are still selecting

11  on Friday or Thursday, don't think oh, I should have been

12  done already.  And I can happily say we anticipate jury

13  selection being done today but out of an abundance of

14  caution, it could be that the trial will begin on Monday,

15  but we anticipate it actually beginning as soon as

16  selection is completed.  Because I don't know what the

17  parties want to do if we're done with selection Friday at

18  noon and what Judge Dearie wants to do at that point.  So

19  that's why I'll phrase it that way.  Any objection.

20          MS. VON DORNUM:  No.  I appreciate that, your

21  Honor, because my worry is always if we promise two days

22  and the second day is a Friday afternoon that people will

23  want to leave.  So I appreciate your phrasing.

24          THE COURT:  Okay.  The other thing is I

25  understand from Judge Dearie he would like two alternates

5

Proceedings

1    and so you'll have to check my math.  That I believe

2    means I have to qualify 32.

3              MS. VON DORNUM:  Yes, your Honor.

4              THE COURT:  The government agree with that?

5              MS. GUPTA:  Yes.

6              THE COURT:  Okay.  If I'm wrong, you can

7    correct my math before Wednesday.  Okay.

8              Judge Dearie has asked for between 70 and 75

9    jurors to be called in for the case.  Now, let me say the

10   following.  It's always possible that we need more but in

11   a situation where we're following COVID protocols,

12   masking and social distance, in other words, jury

13   selections that I've been doing for the last two years,

14   we were doing multiple rounds using multiple courtrooms.

15   Okay?  And both sides are likely familiar with that

16   procedure.  That ends up taking a lot of time, which is

17   fine.

18             But my goal would be to perhaps at least

19   obviate that in large part here.  And so I don't expect

20   70 to 75 will show up.  There are invariably no shows.

21   Right?  So assume we get 60 to 65 jurors and we can fit

22   them in whatever room.  We have to count how many are

23   available in Judge Dearie's courtroom.  We may also use

24   the ceremonial courtroom depending on what's available.

25   So my goal would be to give preliminary instructions and

6

Proceedings

1    do voir dire in the consolidated group of 60.  Okay?

2              Now, there's always the few that there'll be a

3    run on the bank, namely if one juror gets excused, the

4    other jurors will sort of tag onto the basis and want to

5    come forward.  My experience that tends to happen you

6    have a pretty lengthy trial and people say I can't serve

7    for two or three weeks and tends not to happen when you

8    have a shorter trial of say two days or a week.

9              All that being said, we do have a trial

10   involving a person of some renown.  That may raise some

11   issues.  So I was wondering what the parties thought

12   about proceeding in the following fashion.  Okay?

13             There are a number of questions the government

14   has proposed and counsel for Mr. Welnicki has proposed

15   which are what I'll call standard questions that are

16   asked in almost every case.  Then there are some specific

17   questions that relate to -- or at least one specific

18   question that relates to Donald Trump.  Okay?  And I know

19   that Count 2 of the indictment doesn't actually name

20   Donald Trump.  It says John Doe.

21             Now, one way of doing this is to read a summary

22   of the charge either by reading the indictment or some

23   shortened version that doesn't mention Donald Trump

24   initially, go through all of the questions including do

25   you know anyone in law enforcement?  Do you have a bias

7

Proceedings

1  for or against the defendant?  Et cetera, et cetera.

2  Finish.  And then in small groups of ten to 15, maybe

3  ten, either in another courtroom, to the side, wherever,

4  we'll figure that out, I ask the Donald Trump questions

5  and say ladies and gentlemen, the former president at

6  issue here is President Donald Trump.  Is there anything

7  about that that would prevent you from fair and

8  impartial?  I'm going to tweak the language a little bit.

9  But I would do it that way because my worry is if I

10 mention Donald Trump at the outset, I'll start getting a

11 bunch of people coming up and saying in a question about

12 law enforcement will say you know, Judge, I have such

13 terrible feelings or positive feelings, or whatever

14 feelings about Donald Trump that I can't sit in the

15 trial, and that derails us from getting through the most

16 important questions, the most important other questions.

17          Is there any objection to proceeding that way?

18          MS. VON DORNUM:  Not from the defense, your

19 Honor.

20          MS. GUPTA:  Your Honor, our concern is just

21 that we would spend a lot of time going through the sort

22 of standard questions that you mentioned just to find out

23 at the end that some people have such strong feelings

24 about the former president that they can't sit on the

25 jury.  So that amount of time that would be spent on that

8

Proceedings

1    would sort of -- you know, they wouldn't be able to sit

2    anyway.  So that's the only concern we have.

3              THE COURT:  Of course, but that's the point.

4    Right?  Which is that you delay that and you avoid the

5    risk of a run on the bank.  Right?  Because if I announce

6    Donald Trump at the outset, we're going to end up having

7    people in response to is there anything about the case

8    that you've heard so far that would prevent you from

9    being fair and impartial, and we'd have a bunch of Donald

10   Trump folks.  And then we're going to get views on Donald

11   Trump all through the selection.  You're exactly right.

12   That's the point of doing it this way.

13             MS. GUPTA:  I think that works then.

14             THE COURT:  So that brings me to the other

15   logistical question, the summary of the charge or the

16   summary of the case that I would tell the parties at the

17   outset.  So if I take the government's summary of the

18   case, it reads as follows.  The defendant, Thomas

19   Welnicki, is charged with one count of threatening to

20   assault and murder a former president of the United

21   States between September 2021 and January 2022.  Mr.

22   Welnicki's description would be he's charged with

23   threatening to kill former President Donald Trump in

24   telephone calls to the Secret Service.

25             Obviously I would say that Mr. Welnicki has

9

Proceedings

1    pled not guilty, denies the charge in the indictment, and

2    he asserts his innocence.  But Ms. Von Dornum, is there

3    any problem just using the government's formulation?  I

4    think there's something about the timing that is off.

5    There's a misplaced modifier but I'll deal with that in a

6    second.

7              MS. VON DORNUM:  Yeah.  I'm fine with the

8    timing.  I would like it to say in telephone calls to the

9    Secret Service because I do think it will narrow the

10   objections that there are people who feel very strongly

11   about social media or other formats and we may get fewer

12   objections if they understand the mechanism of the

13   statements here.

14             THE COURT:  Any objection from the government?

15             MS. GUPTA:  That's fine.  Thank you.

16             THE COURT:  Okay.

17             MS. VON DORNUM:  And I don't know if you were

18   planning to use the government's second sentence, but if

19   so, I would prefer unless proven guilty rather than until

20   proven guilty.

21             THE COURT:  What I was going to use is

22   something I've used in other cases which is Mr. Welnicki

23   has pled not guilty, denies the charge in the indictment,

24   and asserts his innocence.  Any objection to that?

25             MS. GUPTA:  No.

10

Proceedings

1        THE COURT:  And so I will not be using that

2   second sentence.

3        MS. GUPTA:  Right.

4        THE COURT:  So I'll say the defendant, Thomas

5   Welnicki, is charged with one count of threatening

6   through assault and murder a former president of the

7   United States between September 2021 and January 2022 in

8   telephone calls to the Secret Service.  Okay.  All right.

9        And just so everyone knows, on Wednesday

10  morning we'll give you the jury lists but I'll also give

11  you the questions I'm going to ask so you can look at it

12  and if there's anything at that time you find problematic

13  or wanted altered in any way, you can let me know.

14        Let me just deal with Mr. Welnicki's case

15  specific questions because I think that there are fewer

16  of them.

17        MS. VON DORNUM:  Now just one, your Honor.

18        THE COURT:  Okay.  Is it just the U.S. Secret

19  Service?

20        MS. VON DORNUM:  Yes.

21        THE COURT:  Okay.  I was going to combine that

22  question with a question I customarily ask.  And so let

23  me read this what I'll call compound question.  Do any of

24  you have any preference, bias, or prejudice concerning

25  the Department of Justice, the FBI, or the U.S. Secret

11

Proceedings

1   Service, or any law enforcement agency that would prevent

2   you from being fair and impartial in this case?  Any of

3   you have had any personal or professional connection to

4   anyone employed by any of these agencies?  That work?

5           MS. VON DORNUM:  That's fine, your Honor.

6           MS. GUPTA:  Yes, that works.

7           MS. VON DORNUM:  Thank you.

8           THE COURT:  Okay.  All right.  Let me turn to

9   the -- Ms. Von Dornum and Ms. Gupta, I want to bracket

10  for discussion in a moment questions 11, 12, and 13 in

11  the government's proposed voir dire.  Okay?  Outside of

12  those, Ms. Von Dornum, are there any objections to

13  anything the government has asked?  And to be clear, I'm

14  not going to use the exact formulation but I would say

15  substantially similar, if not identical to those

16  questions.

17          MS. VON DORNUM:  No, your Honor.  I'm sure I

18  will have views on the formulation of 13 when you do

19  that, but I'm happy to wait to see your formulation and

20  discuss if needed.  Otherwise, the content is fine.

21          THE COURT:  Okay.

22          MS. VON DORNUM:  I guess on the one about have

23  you read, heard, or seen anything in the media, if you

24  could put in some of the standard language of it's

25  unlikely you would have, but if you did, to make clear

12

Proceedings

1   this isn't a notorious case.

2          THE COURT:  I'm not familiar with that

3   formulation.  Is there some particular language that --

4   sorry, so you're trying to convey just that I don't

5   expect you to have heard anything but --

6          MS. VON DORNUM:  Exactly.

7          THE COURT:  At the outset.  Any objection?

8          MS. GUPTA:  No.

9          THE COURT:  Well I can say that I do don't

10  expect that any of you will have heard or read or seen

11  anything about this case for Mr. Welnicki, but has anyone

12  in fact?

13         MS. VON DORNUM:  That would be great.  Thank

14  you.

15         THE COURT:  Ms. Von Dornum, I'm not inclined,

16  and Ms. Gupta, I want you to respond to this, ask 11 or

17  12.  I think they're inaccurate.  The government itself

18  has proposed long extensive instructions on what the

19  meaning in the boundaries of the First Amendment in this

20  area are.  And it would be wholly inappropriate to ask

21  questions that short circuited or for instance used legal

22  terms like true threat in asking these questions.

23         MS. GUPTA:  Sorry, your Honor, just one moment,

24  please.

25         THE COURT:  To be clear, they're not from the

13

Proceedings

1    instruction.  That's the point.  If you look at the

2    instruction, they go on about two pages each.

3              MS. GUPTA:  Right.  I think it might be a

4    shortened version of that.

5              THE COURT:  And that's why it's inaccurate.

6              MS. GUPTA:  We do think, your Honor, that the

7    idea expressed in those questions is important.  Would it

8    be possible for us to offer a modification?

9              THE COURT:  You can try to offer a modification

10   but what I'm not going to do is number one, short circuit

11   the jury charge conference because I suspect Mr. Welnicki

12   is going to have views about what the phrasing of that

13   will be and I don't want to prejudice at the outset any

14   of that.

15             And number two, it's just my general reaction.

16   This is a complicated area of the law and you can't just

17   simply say do you have any problems with threats or

18   convicting someone on what they said because that's not

19   accurate.  That's not what the jury is being asked to do.

20             So my instinct is you're welcome to present

21   whatever you want.  11 and 12 don't come close.

22             MS. GUPTA:  Okay.  Understood.

23             THE COURT:  And you can just look at both

24   sides' jury charge.  I'll obviously ask them, but I don't

25   expect that Ms. Von Dornum would agree but I don't know.

14

Proceedings

1   If you agree to some formulation, I would ask it, but I

2   don't see that.

3           MS. VON DORNUM:  That's unlikely, your Honor.

4   I'm certainly happy to read what they propose but it's

5   unlikely I would agree and that's why I did not submit

6   anything along those lines.

7           THE COURT:  Okay.  So I'm not going to ask 11

8   or 12.  I'll look at a reformulation.

9           All right.  Ms. Von Dornum, what's your view on

10  13?

11          MS. VON DORNUM:  So I think the current

12  formulation proposed by the government is over broad and

13  would probably disqualify the entire pool if we were to

14  ask that.  So I know your Honor had said you were going

15  to work on the formulation but I think certainly

16  narrowing it to the actual type of determination a juror

17  would have to make here, something along the lines of do

18  any of the opinions that you hold concerning -- would any

19  of the opinions you hold concerning Donald Trump prevent

20  you from fairly evaluating the evidence on both sides and

21  following the law which the judge will instruct you on,

22  you know, to come.  I think that'll give us a much better

23  outcome and I haven't thought through the exact words,

24  but something that narrows it.

25          THE COURT:  Let me say I agree in part.  Let me

15

Proceedings

1    propose something and the parties can react.  Give me one

2    moment.

3                    (Pause in proceedings)

4             THE COURT:  Okay.  This case involves alleged

5    threats to harm or kill former President Donald Trump.

6    Do any of you have such strong feelings or opinions

7    related to the former president such that you would not

8    be fair and impartial in a case where the alleged threat

9    was directed at former President Trump?  Would any of

10   your feelings about former President Trump prevent you

11   from being able to follow the laws instructed to you?

12            MS. GUPTA:  That works for the government, your

13   Honor.

14            MS. VON DORNUM:  Sorry.  Do you mind reading it

15   again?

16            THE COURT:  Sure.  This case involves

17   alleged -- and I'll again, to be clear, you'll get a copy

18   of the written on Wednesday morning.  This case involves

19   alleged threats to harm or kill former President Donald

20   Trump.  Do any of you have such strong feelings or

21   opinions related to former President Trump such that you

22   could not be fair and impartial in a case where the

23   alleged threat was directed at former President Trump or

24   at him?  Would any of your feelings about former

25   President Trump prevent you from following the law as

16

Proceedings

1   instructed to you?

2            MS. VON DORNUM:  That's fine, your Honor.

3            THE COURT:  Ms. Gupta, do I need 18?  That was

4   the only question I customarily do not ask.  And the

5   reason being I don't mention punishment and I think it's

6   appropriate for Judge Dearie, to the extent he believes

7   is appropriate, to instruct in jury instructions

8   punishment is not for you.

9            MS. GUPTA:  That's fine with us, your Honor, to

10  eliminate that one.

11           MS. VON DORNUM:  I don't know if you ordinarily

12  ask the general question 15, your Honor.  If you do, it

13  seems to me again it's quite broad in scope.  I would

14  prefer it not be asked or at least narrowed.

15           THE COURT:  Just give me one moment.

16           MS. GUPTA:  Your Honor, it's fine with us to

17  omit 15.

18           THE COURT:  Okay.  I typically ask the

19  following question, which I've never actually gotten an

20  answer to that causes someone to be excused, but do any

21  of you have any bias or prejudice for or against Mr.

22  Welnicki or for or against the government that would

23  prevent you from being fair and impartial in this case?

24  I mean no one has ever actually --

25           MS. VON DORNUM:  No one's going to --

Proceedings

1        THE COURT:  -- raised their hand, but I ask it

2   because, you know --

3        MS. VON DORNUM:  I mean that's fine.

4        THE COURT:  Okay.  No one has ever raised their

5   hand.

6        MS. VON DORNUM:  You have to really want to get

7   out to agree to that one.

8        THE COURT:  Right.  You never know.  Sometimes

9   you do but --

10       MS. VON DORNUM:  No, no, it's fine.

11       THE COURT:  Anything else?  Oh, I'm sorry,

12  there was one small matter.  So I notice in the

13  government's proposal about questions 8 and 9, you know,

14  victim of a crime or have you been involved in a criminal

15  investigation?  I ask a general question which, you know,

16  have you been a witness, a victim, a target, et cetera.

17  I don't ask what the outcome is.  Is there any reason to

18  do that?

19       MS. GUPTA:  Your Honor, I think it's fine to

20  focus on whether they have been a witness or a victim

21  rather than relatives or close friends, for example, but

22  I do think we would want to know the outcome.

23       THE COURT:  I don't even know what that means

24  in this context.

25       MS. GUPTA:  The outcome as in, you know, was

18

Proceedings

1  there a conviction?  Did they testify?  I think those

2  would be things that we would want.

3          THE COURT:  I'm happy to follow up with

4  individual, but I don't know what it means to ask what

5  the -- I'll read you what the question is.  Have you, a

6  family member, or close personal friend ever been

7  involved in a criminal case or investigation in any way?

8  For example, as a complainant, a victim, a target, a

9  subject, a defendant, or a witness?  And then you follow

10  up with whoever says whatever they say.

11          MS. GUPTA:  I'm sorry, just to be clear, so you

12  would follow up if they responded that they have?

13          THE COURT:  Yes.

14          MS. GUPTA:  Okay.

15          THE COURT:  So if somebody -- if I say in what

16  context?

17          MS. GUPTA:  Right.

18          THE COURT:  You know, for example, if someone

19  says they were a victim, you would ask is there anything

20  about that in terms of any law enforcement experience

21  that would lead you to be biased for or against the

22  government in the case?  Or conversely, if it was someone

23  who was accused of a crime or convicted of a crime,

24  although obviously that can be disqualifying to serve in

25  certain instances, but in other words, they wouldn't show

19

Proceedings

1    up in the pool.  But so there is follow up.

2          MS. GUPTA:  Okay.  That works for us.

3          THE COURT:  Okay.  All right.  Anything else

4    from either side?

5          MS. VON DORNUM:  I just had a logistical

6    question.  Is it a brand new group on Wednesday or are we

7    getting the remnants of Monday?

8          THE COURT:  I had the same question and we're

9    attempting to find the answer.  I don't know today.  But

10   I will be able to tell you that on Wednesday morning.  I

11   don't know.

12         MS. VON DORNUM:  Okay.  I'm not sure what I

13   would then say but I was just interested.

14         THE COURT:  No, I mean it is pertinent just so

15   everybody knows because it potentially means that the

16   witnesses [sic] have been sitting for two days not having

17   been called and perhaps I treat them a little more nicely

18   than I otherwise would in light of the time that they've

19   been waiting.

20         Okay.  Anything else?

21         MS. VON DORNUM:  No, your Honor.  And we'll

22   begin at 9 and you'll let us know where?

23         THE COURT:  I will let you know what courtroom.

24   You should probably be there at 9 just so I can -- even

25   if the jurors are not available, Mr. Manson will give you

20

Proceedings

1    the list if it's available as well as the list of

2    questions so you'll have 30 minutes or so to review them

3    if you have any changes to them.  I will look for you to

4    submit the consolidated list of names by close of

5    business on Tuesday.  Okay?

6              MS. GUPTA:  Your Honor, what are the current

7    COVID protocols?  Will they be required to wear masks?

8              THE COURT:  So the current COVID protocols in

9    the courthouse are, unless we're in the courtroom 2A for

10   arraignments, masks are optional.  And each judge can

11   require people in the courtroom to wear them.  I will not

12   be requiring it during selection.  If a juror asks, I

13   will say you're welcome to wear a mask but you are not

14   required to.  So that's the current state of the

15   protocol.

16             MS. GUPTA:  Okay.

17             THE COURT:  And I don't anticipate us being in

18   the arraignment courtroom for any purpose so there

19   wouldn't be any circumstance where it's required.

20             MS. GUPTA:  And then will they be questioned in

21   open court or will there be sidebars?

22             THE COURT:  So Mr. Manson will be handing out

23   numbered pieces of paper and what I often do is I will

24   ask a group of questions, three, four, five at a time,

25   and mark down who has raised their number.  And then

Proceedings

1   depending on the question, I will -- some of them we will

2   do in open court, some we will do at the sidebar.  So you

3   know, if it is do you know a lawyer or work for a lawyer

4   or had legal training, that's an open court question,

5   because I expect the chance that it infects the rest of

6   the pool to be relatively small.  Questions where, for

7   instance, have you heard anything about the case, I would

8   do it sidebar because I don't want someone blurting out

9   something that could cause a mistrial or bias.  Questions

10  that require the juror to divulge personal or sensitive

11  information like they've been a victim of a crime I'll do

12  at the sidebar so that they don't have to do it in public

13  view.  But I always give the jurors the option regardless

14  of the question.  They can simply say when I say juror

15  number 5 and they either express or appear to demonstrate

16  some hesitancy, I say do you want to be seen at the

17  sidebar and they always have that option.

18          MS. GUPTA:  And how many jurors are questioned

19  at a time?

20          THE COURT:  So I usually do, and we have to

21  look at the courtroom we have, strike and replace.  So

22  32, if my math is right, and then we ask the 32, and

23  let's say juror number 5 gets excused, then juror number

24  33 comes in and sits in juror 5's spot.  So I think

25  there's some formal name for that method.  I've lost

22

Proceedings

1   that.  And for strikes, by the way, just so you know,

2   we'll discuss that when it comes in greater detail, but I

3   don't allow you to save up strikes.  So if you don't use

4   of peremptory strike in a particular round, you lose it.

5   You can't save them to the end.  Anything else?

6          MS. GUPTA:  That's it, your Honor.  Thank you.

7          THE COURT:  Okay.  Thank you.  Have a nice day.

8          MS. VON DORNUM:  Thank you, your Honor.

9          MS. GUPTA:  Thank you.

10                    (Matter concluded)

11                        -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

# C  E  R  T  I  F  I  C  A  T  E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **1st** day of **September**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.